| | | |
|---|---|---|
| **LAVAUGHN ANTONIO HANTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or

Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

### I.      BACKGROUND

Petitioner was charged in a 72-count superseding indictment for his involvement in a

United Blood Nation RICO conspiracy along with 82 co-defendants.  The charges pertaining to

Petitioner are: Count (1), RICO conspiracy; Count (70), attempted murder in aid of racketeering

activity; Count (71), using or carrying a firearm in relation to a crime of violence and possession

of a  firearm in furtherance of a crime of violence. (3:17-cr-134 ("CR") Doc. No. 1241) (First

Superseding Bill of Indictment).

Petitioner pleaded guilty to the RICO conspiracy and admitted to being "in fact guilty as

charged in Count One of the First Superseding Bill of Indictment." (CR Doc. No. 1403 at 1). The

Plea Agreement sets forth Petitioner's sentencing exposure of a maximum of 20 years'

imprisonment and three years of supervised release.  (CR Doc. No. 1403 at 2).  The Plea

Agreement states that the Court will consider the advisory U.S. Sentencing Guidelines in

determining the sentence; the sentence has not yet been determined and "any estimate of the likely

1

sentence is a prediction rather than a promise;" the Court has the final discretion to impose any sentence up to the statutory maximum; the Court is not bound by the United States' recommendations or agreements; and Petitioner may not withdraw his plea as a result of the sentence imposed. (CR Doc. No. 1403 at 2). The parties agreed to jointly recommend *inter alia*: the plea is timely pursuant to U.S. Sentencing Guidelines § 3E1.1(b); the base offense level will be the greater of 19 or the offense level applicable to the underlying racketeering activity (attempted murder, drug trafficking, and conspiracy to commit robbery); Petitioner was an organizer, leader, manager, or supervisor in the criminal activity so a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) is applicable; and pursuant to U.S.S.G. § 2A2.1(a), the base offense level for attempted murder is either 33 or 27. (CR Doc. No. 1403 at 2-3). The United States took the position that the object of the offense would have constituted first degree murder, and that the base offense level of 33 therefore applies pursuant to U.S.S.G. § 2A2.1(a)(1). Petitioner took the position that the base offense level is instead 27 pursuant to U.S.S.G. § 2A2.1(a)(2). Accordingly, the parties reserved the right to argue for the appropriate offense level at sentencing on the underlying racketeering activity of attempted murder. The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty including the right: to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and to not be compelled to incriminate himself. (CR Doc. No. 1403 at 5). The Plea Agreement contains an express waiver of Petitioner's appellate and post-conviction rights except claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 1403 at 6).

The written Factual Basis provides Petitioner is a "Five-Star General" of UBN; "[a]t all times relevant to the Indictment, the defendant was a member of the UBN enterprise, knowingly and intentionally agreed to conduct or participate in the affairs of the UBN enterprise, and

knowingly and intentionally agreed that he or some other member of the conspiracy would commit at least two racketeering acts;" and that he "participated in racketeering acts in furtherance of the UBN enterprise, including drug trafficking, attempted murder, and robbery." (CR Doc. No. 1404 at 3, 5, 7). The Factual Basis further provides:

> On January 28, 2015 in Mecklenburg County, North Carolina, HANTON shot multiple times at an individual who HANTON believed had murdered an associate of the UBN. HANTON, (56) Myquan Lamar NELSON, and Jamir Lewis KEEN arrived together at a gas station in a red sedan believing the individual was inside it. HANTON then pulled out a handgun and attempted to shoot the individual. The handgun malfunctioned, but then HANTON pulled the slide and fired multiple times, striking a silver sedan.

(CR Doc. No. 1404 at 5).

A Rule 11 hearing came before Magistrate Judge David S. Cayer on April 19, 2018. (CR Doc. No. 2256). Petitioner agreed that he received a copy of the indictment and discussed its contents with counsel. (CR Doc. No. 2256 at 3). The prosecutor summarized the charge and the Petitioner's sentencing exposure. (CR Doc. No. 2256 at 3-4). Judge Cayer asked the Petitioner if he "fully understand[s] the charge against [him], including the maximum penalty [he] face[d] if convicted" and Petitioner responded Yes, sir." (CR Doc. No. 2256 at 4). The Petitioner stated that he understood that the Court would not be able to determine the applicable sentencing guideline range until after the PSR had been prepared and Petitioner has had the opportunity to comment on it. He further indicated that he understood that the sentence may be higher or lower than the guidelines as well as the rights he was waiving by pleading guilty. (CR Doc. No. 2256 at 5-6). Petitioner stated that he understood the terms of his Plea Agreement and agreed with them, including the appellate and post-conviction waivers. (CR Doc. No. 2256 at 12). Petitioner further stated that he read the Factual Basis, understood it, and agreed with it. (CR Doc. No. 2256 at 12). He confirmed that he plea was voluntary and was not the product of threats, intimidation, force, or

promises of leniency or a light sentence other than the terms of the plea agreement. (CR Doc. No. 2256 at 13). Petitioner had enough time to discuss with counsel any possible defenses and was satisfied with the services of counsel.

The Presentence Investigation Report's ("PSR") offense conduct section is taken *verbatim* from the Factual Basis.[1] (CR Doc. No. 1745 at ¶¶ 8-26). Petitioner accepted responsibility for his conduct as follows:

> I accept responsibility for the conduct reference[d] in the plea agreement. I accept responsibility for discharging a firearm in an act of violence. Even though no one was shot or harmed, someone could have so I hold myself accountable and responsible for those acts which relate[] to me in any way. I hold myself fully accountable and nor do I blame anyone else. I ask for forgiveness for the actions in which I am responsible.

(CR Doc. No. 1745 at ¶ 31).

The PSR calculated the offense level in three groups; Group 1 was for RICO conspiracy based on the January 28, 2015 attempted murder; Group 2 was RICO conspiracy based on drug trafficking involving cocaine and marijuana; and Group 3 was RICO conspiracy based on conspiracy to commit robbery. The base offense level for Group 1 was calculated as 33 because the object of the offense would have constituted first-degree murder pursuant to U.S. Sentencing Guidelines § 2A2.1(a)(1). (CR Doc. No. 1745 at ¶ 35). Two levels were added for Petitioner's role as an organizer, leader, manager, or supervisor of a criminal activity pursuant to § 3B1.1(c), resulting in an offense level subtotal for Group 1 of 35. (CR Doc. No. 1745 at ¶¶ 38, 40). The base offense level for Group 1 was calculated as 6 based on trafficking less than 50 grams of cocaine and less than one kilogram of marijuana. (CR Doc. No. 1745 at ¶ 41). Two levels were added because a dangerous weapon was possessed, resulting in an offense level subtotal for Group 2 of 46. (CR Doc. No. 1745 at ¶¶ 42, 46). The base offense level for Group 3 was calculated as

---

[1] Petitioner waived the presentence interview. (CR Doc. No. 1745, Part C).

20 for conspiracy to commit robbery. (CR Doc. No. 1745 at ¶ 47). Three levels were deducted because the offense was a conspiracy, resulting in an adjusted offense level subtotal of 17. (CR Doc. No. 1745 at ¶¶ 48, 52). After applying the multiple count adjustment, the combined adjusted offense level was 35. (CR Doc. No. 1745 at ¶¶ 53, 54, 56). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 32. (CR Doc. No. 1745 at ¶¶ 58-60). Petitioner had 12 criminal history points and a criminal history category of V. (CR Doc. No. 1745 at ¶¶ 80-81). The resulting advisory guideline range was 188 to 235 months' imprisonment followed by between one and three years of supervised release. (CR Doc. No. 1745 at ¶¶ 110, 113).

Petitioner filed objections to the PSR that: the Factual Basis is insufficient to support a finding of first-degree attempted murder; that the base offense level for Group 1 should have been 27 rather than 33; that the total offense level should be 26 rather than 29; that the criminal history points should be 7 and the criminal history category should be IV; and that the correct advisory guideline range is 92 to 115 months' imprisonment. (CR Doc. No. 1730). Petitioner further argued that he should receive credit for time served on Mecklenburg County Case Number 16CRS202361 because it involved the same conduct as this criminal case. (CR Doc. No. 1730 at 2); see (CR Doc. No. 1745 at ¶ 79).

The sentencing hearing came before the Court on August 21, 2018. (CR Doc. No. 2257). The Petitioner stated in open court that the answers he provided during the Rule 11 hearing were true and correct, and that he would answer them the same if asked again. (CR Doc. No. 2257 at 5). Petitioner confirmed that he is guilty of RICO conspiracy. (CR Doc. No. 2257 at 6). Petitioner agreed that he received a copy of the PSR, read it, understood it, and reviewed it with counsel. (CR Doc. No. 2257 at 7-8). Counsel explained that the PSR objection regarding the Factual Basis and offense level was whether there is sufficient evidence of premeditation to support a first-degree

murder finding rather than second-degree murder. (CR Doc. No. 2257 at 8-9); see (CR Doc. No. 2023) (Statement of Reasons, indicating that Petitioner's other objections were withdrawn).

The Government called Stephen Parker, a Charlotte-Mecklenburg County Police Officer and member of the Department's FBI safe streets task force, to testify at the sentencing hearing. (CR Doc. No. 2257 at 9). Officer Parker testified about the January 28, 2015 incident, at which he was present, and the Government introduced video of the incident. (CR Doc. No. 2257 at 14-16). The Government also called a gang member who testified that Petitioner and other gang members planned the shooting in retaliation for another murder and that Petitioner said he was "hitting," *i.e.*, intending to shoot, the victim. (CR Doc. No. 2257 at 51, 60). The Court denied the Petitioner's offense level objection, finding that the evidence that Petitioner's statement about "hitting" the victim indicated deliberation, and that it was absolutely clear from the video that it was Petitioner who was shooting. (CR Doc. No. 2257 at 82-90). The Court noted that the Government easily satisfied the preponderance of the evidence standard and also would have been sufficient to establish Petitioner's guilt beyond a reasonable doubt. (CR Doc No. 2257 at 90). Defense counsel asked the Court to sentence Petitioner at the low end of the guidelines. Petitioner chose to address the Court. He denied saying he was going to "hit" anyone, that nobody was harmed, and that he is remorseful. (CR Doc. No. 2257 at 101-03). The Court noted that Petitioner could take the stand and testify if he wished to do so and Petitioner conferred with counsel about whether he wanted to testify. (CR Doc. No. 2257 at 105). After a recess, Petitioner chose not to take the stand. (CR Doc. No. 2257 at 110). The prosecutor asked for a sentence at the middle of the guidelines. (CR Doc. No. 2257 113-16).

The Court decided not to depart or vary from the guidelines but noted that a consecutive sentence was appropriate because of the grievous and reckless nature of the shooting. (CR Doc.

No. 2257 at 124-25). The Court therefore sentenced Petitioner to 216 months' imprisonment consecutive to any previously-imposed state sentence, followed by three years of supervised release. (CR Doc. No. 2257 at 126); (CR Doc. No. 2022).

On direct appeal, counsel filed a memorandum brief pursuant to Anders v. California, 386 U.S. 738 (1967), which discussed the correctness of the Court's application of the attempted murder cross-reference to Petitioner's offense level. Petitioner filed a *pro se* supplemental brief. (Fourth Cir. Case No. 18-4672, Doc. No. 34). The Fourth Circuit affirmed on April 22, 2019, finding that the Court did not err in deciding to apply the cross-reference for attempted first-degree murder and that Petitioner's *pro se* supplemental brief was meritless. United States v. Hanton, 765 F. App'x 13 (4th Cir. 2019).

Petitioner filed his § 2255 Motion to Vacate in the instant case on April 21, 2020. (Doc. No. 1). However, the § 2255 Motion to Vacate was seriously deficient so Petitioner was ordered to amend. (Doc. No. 2). Petitioner filed the Amended § 2255 Motion to Vacate on July 25, 2020. (Doc. No. 6). Petitioner argues (restated and renumbered): (1) the guilty plea was involuntary; (2) the RICO charge based on attempted first-degree murder is unconstitutional and deprived Petitioner of due process and was based on misrepresentations to the grand jury; (3) trial counsel provided ineffective assistance; and (4) appellate counsel provided ineffective assistance. Petitioner asks the Court to vacate and restructure his sentence or allow him to plead anew.

The Government argues that Petitioner's claims are procedurally defaulted and meritless, and that his new claim of ineffective assistance of counsel at sentencing does not relate back to the original, timely § 2255 Motion to Vacate and is time-barred, and is procedurally barred, and meritless. (Doc. No. 13).

Petitioner filed a Reply arguing that the Government's response contains falsehoods, half-truths, and inconsistencies; that his claims are meritorious; and that he can establish cause and prejudice to overcome the Government's allegations of procedural default. (Doc. No. 14).

## II.      STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved based on the record and governing case law and that no evidentiary hearing is warranted. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.      DISCUSSION[2]

### (1)      Involuntary Plea

First, Petitioner contends that his guilty plea is involuntary and that the Court failed to comply with Rule 11 when it accepted his plea, because he did not understand the nature and elements of RICO conspiracy charge or the attempted first-degree murder upon which the RICO conspiracy was predicated.

---

[2] Petitioner's claims are lengthy, duplicative, and confusing. Any argument, claim, or sub-claim not specifically addressed in this Order has been considered and rejected.

Before accepting a guilty plea, a district court must conduct a plea colloquy in which it informs the defendant of, and determines if the defendant comprehends, the nature of the charge to which he is pleading guilty, the maximum possible penalty he faces, any mandatory minimum penalty, and the rights he is relinquishing by pleading guilty. Fed. R. Crim. P. 11(b)(1); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). The court must also ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement. Fed. R. Crim. P. 11(b)(2), (3). As a general matter, "a plea does not qualify as intelligent unless a criminal defendant first received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." See generally Bousley v. United States, 523 U.S. 614, 618 (1998)) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).

However, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Id. at 621. A § 2255 motion is not a substitute for direct appeal. See United States v. Frady, 456 U.S. 152, 167-68 (1982). Claims of error that could have been raised before the trial court and on direct appeal, but were not, are procedurally defaulted from § 2255 review unless the petitioner shows both cause for the default and actual prejudice, or demonstrates that he is actually innocent of the offense. See Bousley, 523 U.S. at 621; United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). To show prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his actual and substantial disadvantage" and were of constitutional dimension. See United States v. Frady, 456 U.S. 152, 170 (1982). To show actual innocence, a petitioner must demonstrate that

he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014); see also McQuiggin v. Perkins, 569 U.S. 383, 393 (2013) ("a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims … on the merits notwithstanding the existence of a procedural bar to relief.").

This claim is procedurally defaulted from federal habeas review because Petitioner failed to challenge the voluntariness of his plea on direct appeal, and he has failed to demonstrate cause and prejudice or actual innocence.[3]

Moreover, this claim is conclusively refuted by the record, which demonstrates that the guilty plea was knowingly and voluntarily entered with a full understanding of the charges and the plea's consequences in compliance with Rule 11. Petitioner stated, under oath, that he understood the charges, the consequences of his guilty plea including his sentencing exposure, that he was guilty as charged, and that he was freely and voluntarily pleading guilty. Petitioner's present self-serving claims to the contrary are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Accordingly, Petitioner's claim that his guilty plea was not knowing and voluntary is dismissed as procedurally defaulted and, alternatively, denied on the merits.

---

[3] To the extent that the Petitioner suggests that ineffective assistance of counsel constitutes "cause" to excuse his procedural default, this fails because his claims of ineffective assistance of counsel are meritless. See Section (3), *infra*.

**(2)**      **<u>Indictment</u>**

Petitioner contends that the indictment charging RICO based on attempted first-degree murder is insufficient, deprived Petitioner of due process, and was based on the prosecutor's misrepresentations to the grand jury in that "no victim was identified." (Doc. No. 6 at 7).

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." <u>United States v. Willis</u>, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>Blackledge v. Perry</u>, 417 U.S. 21, 29-30 (1974). Petitioner's claims of grand jury improprieties and indictment error were waived by Petitioner's knowing and voluntary guilty plea. <u>See</u> Section (1), *supra*.

Further, this claim is procedurally defaulted from § 2255 review because Petitioner did not raise the alleged grand jury and indictment errors on direct appeal, and he has failed to demonstrate cause and prejudice or actual innocence. <u>See</u> Section (1), *supra*.

Even if this claim were not waived and procedurally defaulted, it would be denied on the merits. An indictment need only contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). An indictment is sufficient if it sets forth the essential elements of the offense, fairly informs the defendant of the nature of the charges against him so that he may prepare his defense, and enables the defendant to plead the defense of double jeopardy in a future prosecution for the same offense. <u>See</u> <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974); <u>United States v. Daniels</u>, 973 F.2d 272, 274 (4th Cir. 1992). Typically, an indictment adequately sets forth the elements of the offense if it tracks the language of the relevant statute and contains a brief statement of the facts and circumstances of the alleged offense. <u>Hamling</u>, 418 U.S. at 117. When the charged crime is a conspiracy, "all that is necessary

in the indictment is that the object of the conspiracy be set forth sufficiently to identify the offense which the defendant is charged with conspiring to commit." United States v. Matzkin, 14 F.3d 1014, 1019 (4th Cir. 1994).

The First Superseding Indictment charged in Count (1), that Petitioner, in violation of 18 U.S.C. § 1962(d):

> [T]ogether with others both known and unknown to the Grand Jury, each being a person employed by and associated with the United Blood Nation, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the United Blood Nation enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of:
>
> i. multiple acts involving murder in violation of North Carolina Gen. stat. §§ 14-17, 14-2.4, 14-2.5 and 14-5.2; New York Penal Law §§ 110.00, 105.15, 125.25, 125.27, and 20.00; and South Carolina Code of Laws §§ 16-3-10, 16-3-29, § 16-1-40; and robbery, in violation of North Carolina Gen. Stat. §§ 14-87, 14-87.1, 14-2.4, 14-2.5, and 14-5.2; and South Carolina Code of Laws §§ 16-3-19 and 16-11-330; and
>
> ii. multiple acts indictable under 18 U.S.C. §§ 1028, 1343, 1344, 1503, 1512, and 1951; and
>
> iii. multiple offenses involving narcotics trafficking in violation of 21 U.S.C. §§ 841(a)(1), 843, and 846.
>
> [And] it was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

(CR Doc. No. 1241 at 18-19).

The First Superseding Indictment exhaustively sets forth the manners and means of the conspiracy. (CR Doc. No. 1241 at 19-20). It also alleges the following overt acts:

> On or about December 31, 2013 … LAVAUGHN ANTONIO HANTON … possessed marijuana and cocaine, with the intent to distribute, and a firearm [OA-52]

On or about January 28, 2015 … LAVAUGHN ANTONIO HANTON … attempted to murder an individual he believed to be involved in the murder of another individual. [OA-99]

On or about December 3, 2015 … LAVAUGHN ANTONIO HANTON … discussed a robbery that [a co-defendant] was going to commit. [OA-133]

On or about January 19, 2016 … LAVAUGHN ANTONION HANTON … possessed two firearms, one with an obliterated serial number. [OA-144]

(CR Doc. No. 1241 at 27, 34, 38, 40).

The foregoing sufficiently charged the RICO conspiracy by tracking the statutory language and setting forth the essential facts to permit Petitioner to prepare for trial and avoid any double jeopardy issue. Petitioner appears to argue that the Indictment was insufficient because it did not include the elements of attempted first-degree murder and does not identify the attempted murder victim by name. However, the Indictment was not required to charge the elements of the individual racketeering acts or to name the attempted murder victim. See United States v. Adoma, 781 F. App'x 199 (4th Cir. 2019) (in a RICO conspiracy, "[t]he Government may identify and allege the types of crimes that constitute the pattern of racketeering activity, without alleging specific racketeering acts at all"); United States v. John-Baptiste, 747 F.3d 186 (3d Cir. 2014) (RICO indictment was adequately specific even though it did not include the name of the alleged victims because the time periods in which the alleged crimes occurred and the descriptions of the offenses were adequately specific). No charging error occurred and, therefore, this claim would be denied on the merits even if it were not waived and procedurally defaulted.

**(3)    Ineffective Assistance of Trial Counsel**

Petitioner contends that trial counsel was ineffective for (a) failing to have the attempted first-degree murder indictment quashed, (b) misadvising him about the guilty plea, which rendered the plea involuntary, (c) failing to adequately investigate the law in relation to the facts, (d) failing

to object that the prosecutor's sentencing arguments were based on inapplicable counts; and (e) failing to inform the Petitioner of his right to appeal.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

**A.      Indictment Defect**

Petitioner alleges that counsel was ineffective for failing to move to quash the indictment. However, Petitioner has failed to identify any indictment error. See Section (2), *infra*. As no indictment error existed, counsel cannot have performed deficiently by failing to move to quash the First Superseding Indictment, and for the same reason, Petitioner is unable to demonstrate prejudice.

**B.      Guilty Plea**

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the

voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Petitioner contends that counsel intentionally misrepresented the sentence that would be imposed and "the admission of guilt to be tendered." (Doc. No. 6 at 5). These claims are conclusively refuted by the record. At the Rule 11 hearing, Petitioner stated under oath that he understood the charges, that he was guilty of the offenses to which he was pleading guilty, that he understood his sentencing exposure, that the advisory guideline range had not yet been determined, and that his sentence may be higher or lower than the guidelines. (CR Doc. No. 2256 at 5-12). Petitioner also admitted that the Factual Basis, understood it, and agreed with it. (CR Doc. No. 2256 at 12). Petitioner he was pleading guilty freely and voluntarily and that he had not been made any promises of leniency or a light sentence. (CR Doc. No. 2256 at 13). Petitioner's present self-serving claims that counsel somehow misrepresented his sentencing exposure or the acts to which he was admitting his guilt are conclusively refuted by his own statements in open court and will be rejected. See Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); Lemaster, 403 F.3d at 221-22 (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

### C. <u>Investigation</u>

Petitioner contends that counsel was ineffective for failing to adequately investigate the law in relation to the facts of his case. Specifically, Petitioner contends that the prosecutor therefore erroneously charged Petitioner in the fatally defective indictment and that there was no evidence to support the attempted first-degree murder underlying his RICO charge.

The Court has already rejected Petitioner's claim that an indictment error occurred. <u>See</u> Section (2), *supra*. Petitioner's contention that there was inadequate evidence to support his RICO conspiracy conviction based on attempted first-degree murder is also meritless. Petitioner admitted his guilt of the RICO conspiracy as charged. The Government's presentation of evidence at the sentencing hearing reveals that it could have easily proven Petitioner's guilt at trial of RICO conspiracy based on attempted first-degree murder. The Court noted at the sentencing hearing that the Government's credible evidence, including witness testimony and video evidence, demonstrated Petitioner's guilt by a preponderance of the evidence as well as beyond a reasonable doubt. <u>See</u> (CR Doc. No. 2257 at 90). Petitioner has failed to demonstrate how further investigation of fact or law by counsel had a reasonable probability of changing the outcome of the criminal case in any way.

### D. <u>Sentencing</u>

Petitioner appears to argue that counsel was ineffective at sentencing for failing to object that the prosecutor's base offense level arguments were based on the dismissed attempted murder and firearms charges in Counts (70) and (71), and for failing to distinguish Petitioner's case from other cases cited by the Government because nobody was actually shot.

When applying the <u>Strickland</u> prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." <u>Glover v. United States</u>, 531 U.S. 198, 203

(4th Cir. 2001).

This claim is conclusively refuted by the record. The Sentencing Guidelines for RICO offenses set a defendant's base offense level by referring to crimes committed as part of the conspiracy. U.S.S.G. s 2E1.1(a)(2). Where there is more than one underlying offense, the district court should treat each underlying offense as if contained in a separate count of conviction. U.S.S.G. § 2E1.1(a)(2), application note 1.

The Plea Agreement in the instant case provides that the base offense level for the RICO conspiracy would be the greater of 19 or the offense level applicable to the underlying racketeering activity (attempted murder, drug trafficking, and conspiracy to commit robbery). The Government came forward with proof at the sentencing hearing from which the Court concluded, by a preponderance of the evidence, that the attempted first-degree murder guideline applies. <u>See</u> U.S.S.G. § 2D2.1. The Court correctly relied on the underlying racketeering activity to support the RICO conspiracy sentencing because it was part of Petitioner's admitted conduct when he pleaded guilty; no separate convictions for those offenses were required.

**E.      <u>Notice of Appeal</u>**

Petitioner contends that trial counsel was ineffective for failing to inform him of the right to appeal.

This claim is a non-starter because Petitioner prosecuted a direct appeal with the assistance of counsel. Petitioner did not lose his right to appeal through any alleged failure by counsel to inform him of his right to appeal, and therefore, this claim will be denied.

**(4)      <u>Ineffective Assistance of Appellate Counsel</u>**

Petitioner contends that appellate counsel was ineffective for (a) filing a memorandum brief pursuant to <u>Anders</u> and failing to adequately consult with Petitioner and follow Petitioner's

instructions about the appellate claims, and (b) failing to timely inform Petitioner of the opportunity to file a petition for writ of certiorari, which deprived Petitioner of the opportunity to file a certiorari petition.

## A.  **Appellate Claims**

Petitioner contends that counsel was ineffective for failing to adequately consult with Petitioner, follow Petitioner's instructions about the appellate claims, and filing an Anders memorandum brief on appeal.

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212

F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under <u>Strickland</u> is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Petitioner has failed to come forward with any appellate claim that had a reasonable probability of prevailing on direct appeal had counsel raised it. Counsel was ethically obligated to file an <u>Anders</u> memorandum brief upon finding no non-frivolous appellate issues to raise before the Fourth Circuit. Moreover, Petitioner could not have been prejudiced by any of counsel's alleged failings in this regard because he had the opportunity to file a *pro se* brief raising the claims and case law he wished the Fourth Circuit to consider. The Fourth Circuit found his claims to be meritless, and therefore, he is unable to establish that counsel was deficient for failing to raise them, or that he was prejudiced in any way.

### B.    Certiorari

Finally, Petitioner contends that counsel was ineffective for failing to timely inform him of the opportunity to file a petition for writ of certiorari, which deprived Petitioner of the opportunity to file a certiorari petition.

Unlike the mandatory jurisdiction of the courts of appeals in a direct criminal appeal, "[r]eview on a writ of certiorari is not a matter of right, but of judicial discretion." Supreme Court Rule 10. While "indigent defendants pursuing appeals as of right have a constitutional right to a brief filed on their behalf by an attorney, <u>Anders v. California</u>, 386 U.S. 738 (1967), that right does not extend to forums for discretionary review." <u>Austin v. United States</u>, 513 U.S. 5, 8 (1994). In the case of an unsuccessful appellant represented by counsel, attorney responsibilities are outlined in the plan adopted by the Fourth Circuit Judicial Counsel implementing the Criminal Justice Act of 1984. <u>See</u> 18 U.S.C. § 3006A. The Fourth Circuit's CJA plan provides that "counsel shall

inform the defendant, in writing, of his right to petition the Supreme Court for a writ of certiorari. If the defendant, in writing, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review, counsel shall prepare and file a timely petition for such a writ and transmit a copy to the defendant." Plan of the United States Court of Appeals for the Fourth Circuit, In Implementation of the Criminal Justice Act, § 5, ¶ 2.

The record reveals that counsel complied with the Fourth Circuit's CJA plan. Counsel mailed Petitioner a letter on April 23, 2019 – the day after the Fourth Circuit issued its opinion in Petitioner's case – that enclosed a copy of the Fourth Circuit's decision and notified Petitioner of his right to petition the Supreme Court for certiorari. (Doc. No. 13-1 at 1). Counsel informed Petitioner that "this type of Petition will be without merit, so [counsel] will have to withdraw" if Petitioner chose to proceed with a certiorari petition. (Id.). Counsel instructed Petitioner that, if he wanted to file a certiorari petition, he should "send [counsel] a letter in writing," counsel would withdraw, and Petitioner "will have to file [his] own Petition with the U.S. Supreme Court." (Id.).

Petitioner had nearly the full 90-day certiorari period to inform counsel of his wish to file a *pro se* certiorari petition and file a *pro se* petition, and failed to do so. The claim that counsel performed deficiently in this regard will therefore be denied.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's Amended § 2255 Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Amended § 2255 Motion to Vacate, (Doc. No. 6), is **DISMISSED** and **DENIED**.

2.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing

Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of

appealability.  <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338

(2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims

debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is

denied on procedural grounds, a petitioner must establish both that the dispositive

procedural ruling is debatable and that the petition states a debatable claim of the

denial of a constitutional right).

3.    The Clerk is instructed to close this case.


Signed: June 8, 2021


Frank D. Whitney
United States District Judge